**SEALED**   AUSA CHASE   **SEALED**

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>CARLTON EDWARD CASH<br><br>_Defendant(s)_ | )<br>)<br>)  Case No.  20-6162-STRAUSS<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 5, 2019-March 5, 2020__ in the county of _____Broward_____ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) | Possession with the intent to distribute five (5) grams or more of methamphetamine, its salts, isomers, or salts of its isomers (3 counts) |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Joseph C. Krissel; DEA Task Force Officer
_Printed name and title_

Sworn to before me and signed in my presence.

Date:  03/13/2020

_____
Judge's signature

City and state:  Fort Lauderdale, Florida

JARED M. STRAUSS; U.S. MAGISTRATE JUDGE
_Printed name and title_

## SEALED AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Joseph C. Krissel, being duly sworn, hereby state as follows:

1.  I am a Detective for the Margate Police Department ("MPD") and a Task Force Officer of the Drug Enforcement Administration ("DEA") assigned to the Miami Field Division. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Task Force Officer in the Miami Field Division of DEA since October 2017. Prior to becoming a DEA Task Force Officer, I was assigned to the MPD Special Enforcement Team from January 2015 to October 2017 and to the MPD Road Patrol Division from October 2012 to January 2015. I have received training regarding narcotics trafficking and money laundering, and have been personally involved in investigations concerning the possession and distribution of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

2.  I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts herein. The affidavit does not include all the information known to me, but only information sufficient to establish probable cause for the arrest of Carlton Edward CASH for violations of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), relating to three (3) possessions with the intent to distribute five (5) grams or more of methamphetamine, its salts, isomers, or salts of its isomers.

DECEMBER 5, 2019 SALE OF APPROXIMATELY 28 GRAMS OF METHAMPHETAMINE FOR $1,600

3.  On or about December 5, 2019, at approximately 2:49 PM, DEA Group 16 conducted a buy/walk operation from Brandon West ("West") utilizing an undercover ("UC") Broward County Sheriff's Office ("BSO") Detective. During the operation, West delivered to the BSO UC one (1) ounce

[1]

or 28 grams of methamphetamine in exchange for $1,600.00 in DEA Official Advanced Funds ("OAF") at the parking lot of West's apartment complex located at 241 NE 38th Street, Oakland Park, Broward County, Florida. The aforementioned transaction was audio and video recorded. Surveillance conducted by law enforcement was maintained until approximately 3:09 PM, when West was observed exiting his apartment accompanied by Carlton Edward CASH ("CASH"). West and CASH entered CASH's vehicle and departed the area.

4. On or about December 16, 2019, DEA Group 16 developed a Confidential Source (CS1). CS1 was present during the aforementioned methamphetamine purchase on December 5, 2019. CS1 advised CASH had supplied for a payment of $800.00 the approximately one (1) ounce of methamphetamine West subsequently sold to the BSO UC for $1,600.00. CS1 further advised that CASH receives pound quantities of methamphetamine shipped from California.

<u>JANUARY 31, 2020 SALE OF 28 GRAMS OF METHAMPHETAMINE FOR $800.00</u>

5. On or about January 29, 2020, CS1 initiated memorialized text message contact with CASH to order one ounce of methamphetamine that included the following communications:

> CS1 advised CASH: "I was hoping to get another O [referring to ounce] like last time...he like it."
> CASH responded: "Of course he liked it. It's high grade shit from south Cali [California]. Probably made in Mexico."
>
> CASH also messaged CS1: "The Luce [slang for Lucy referring to methamphetamine] I can have ready is already crushed, is that ok?"

6. On or about January 31, 2020, CS1 paid $800.00 to CASH at CASH's residence located at 1125 North Victoria Park Road in Fort Lauderdale, Broward County, Florida, to purchase approximately twenty-eight (28) grams of a substance that field tested positive for methamphetamine. At approximately 1:14 PM, CS1 arrived at CASH's residence. CS1 stated after entering CASH's residence, CS1 followed CASH to a first floor study area. CASH weighed a bag of methamphetamine in front of CS1. The weight of the bag was less than the previously negotiated twenty-eight (28) grams. CS1 followed CASH upstairs into a bathroom adjacent to CASH's bedroom.

[2]

Inside of the bathroom, CASH retrieved a second plastic bag with an unknown quantity of methamphetamine. CASH removed some methamphetamine from the second bag and placed this methamphetamine into the bag CASH then sold to CS1. CASH returned the second bag of methamphetamine to the bathroom from where the second bag had been removed. The aforementioned transaction was audio and video recorded.

<u>MEETING BETWEEN CS1 AND CASH IN WILTON MANORS, FLORIDA ON FEBRUARY 26, 2020</u>

7. On or about February 23, 2020, CASH sent CS1 an unsolicited text message stating:

> "I was just paid a VERY uncomfortable visit by the drug task force investigators of the Broward County Sheriff Dept. they told me they knew enough to present a case to get a search warrant and probably arrest me if I didn't immediately voluntarily cease my illegal activities that would probably result in confiscation of my house and at least 5-10 years in prison BEFORE parole! So needless to say my ass is SCARED and will do EXACTLY what they said to get them off my case!!! Therefore I'm completely finished!! So you know what that means. Good luck!!"

8. Further investigation was conducted by DEA Miami FD Group 16 and BSO, who were unable to determine if anyone had approached CASH. CS1 scheduled a meeting with CASH to question CASH about this text message. On or about February 26, 2020, CASH, CS1, and an unknown male ("UM") met at Georgie's Alibi Monkey Bar located at 2266 Wilton Drive in Wilton Manors, Broward County, Florida. During the meeting, CASH refused to speak about narcotics when the UM was present. When the UM left the table, CASH reiterated that CASH had been approached by BSO but was still willing to sell CS1 methamphetamine. The meeting was audio recorded by CS1.

<u>MARCH 5, 2020 SALE OF 28 GRAMS OF METHAMPHETAMINE FOR $800.00</u>

9. On or about March 5, 2020, at approximately 4:45 PM, CS1 paid $800.00 to CASH at CASH's residence located at 1125 North Victoria Park Road, in Fort Lauderdale, Broward County, Florida, to purchase approximately one (1) ounce or 28 grams of a substance that field tested positive for methamphetamine. Starting at approximately 2:52 PM, CS1 ordered two (2) ounces of methamphetamine from CASH during a recorded telephone conversation. CASH delayed the delivery until, at approximately 3:56 PM, CASH text messaged CS1: "It's ready. Come get it." At

approximately 4:45 PM, CS1 arrived at CASH's residence and made contact with CASH, who was standing in front of his residence. CS1 informed CASH that CS1 only wished to purchase one (1) ounce of methamphetamine, not two (2) ounces. CASH instructed the CS to follow CASH into his residence. After entering the residence, CASH and CS1 proceeded to the study area where CASH removed approximately one (1) ounce from the packaging and placed this methamphetamine into a desk drawer. CASH sold CS1 the remainder of the methamphetamine for $800.00 and CS1 departed CASH's residence. This transaction was audio and video recorded.

10. Based on the above information and facts, your affiant submits there is probable cause to believe that Carlton Edward CASH did, on December 5, 2019, January 31, 2019, and March 5, 2020, knowingly and intentionally possess with the intent to distribute five (5) grams or more of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
JOSEPH C. KRISSEL
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to before me this 13th day of March, 2020.

_____
JARED M. STRAUSS
UNITED STATES MAGISTRATE JUDGE

[4]