UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60118-CR-UNGARO

UNITED STATES OF AMERICA,

vs.

CARLTON EDWARD CASH,

Defendant.
_____/

### STIPULATED FACTUAL PROFFER FOR GUILTY PLEA

The United States of America, by and through the undersigned Assistant United States Attorney, and the Defendant, personally and through his attorney, hereby submit this stipulated factual proffer to establish the Defendant's guilt of Counts 1, 2, 3, 4, and 5 of the Information. The parties agree that the below factual proffer is a summary relating to the defendant's conduct and does not include every detail of the offense but are sufficient to establish the elements of the offense. The defendant further agrees that the facts below were committed knowingly, willfully, and voluntarily.

1. A methamphetamine seller identified Cash as his supplier when approached to cooperate by the Drug Enforcement Administration ("DEA"). Cash subsequently made four sales of methamphetamine to his codefendant\cooperator, who was outfitted with recording devices.

### COUNT 1
### DECEMBER 5, 2019 SALE OF APPROXIMATELY 26.8 GRAMS OF METHAMPHETAMINE FOR $1,600

2. On or about December 5, 2019, at approximately 2:49 PM, DEA conducted a buy/walk operation from a methamphetamine seller utilizing an undercover ("UC") Broward County Sheriff's Office ("BSO") Detective. During the operation, the seller delivered to the BSO UC one (1) ounce or 28 grams of a substance that later field tested positive for methamphetamine in exchange for $1,600.00 in DEA Official Advanced Funds ("OAF") at the parking lot of the seller's apartment complex located in Oakland Park, Broward County, Florida. The aforementioned

[1]

transaction was audio and video recorded. Surveillance conducted by law enforcement was maintained until approximately 3:09 PM, when the seller was observed exiting the seller's apartment accompanied by Cash. The seller and Cash entered Cash's vehicle and departed the area.

3. On or about December 16, 2019, DEA task force officers approached the person that sold the methamphetamine to the BSO UC on December 5, 2019. This person agreed to cooperate with law enforcement and will herein be referred to using the abbreviation CD for cooperating defendant. The CD advised Cash had supplied for a payment of $800.00 the approximately one (1) ounce of methamphetamine the CD subsequently sold to the BSO UC for $1,600.00. The CD further advised that Cash receives pound quantities of methamphetamine shipped from California.

4. A test performed by a forensic chemist employed at the DEA Southeast Laboratory found the substance sold by Cash to be approximately 26.8 grams of methamphetamine.

COUNT 2
JANUARY 31, 2020 SALE OF 28.1 GRAMS OF METHAMPHETAMINE FOR $800.00

5. On or about January 29, 2020, the CD initiated memorialized text message contact with Cash to order one ounce of methamphetamine that included the following communications:

The CD advised Cash: "I was hoping to get another O [referring to ounce] like last time...he like it."

Cash responded: "Of course he liked it. It's high-grade shit from south Cali [California]. Probably made in Mexico."

Cash messaged the CD: "The Luce [slang for Lucy referring to methamphetamine] I can have ready is already crushed, is that ok?"

6. On or about January 31, 2020, the CD paid $800.00 to Cash at Cash's residence located at 1125 North Victoria Park Road in Fort Lauderdale, Broward County, Florida, to purchase approximately twenty-eight (28) grams of a substance that field tested positive for methamphetamine. At approximately 1:14 PM, the CD arrived at Cash's residence. The CD stated after entering Cash's residence, the CD followed Cash to a first floor study area. Cash weighed a bag of methamphetamine in front of the CD. The weight of the bag was less than the previously

[2]

negotiated twenty-eight (28) grams. The CD followed Cash upstairs into a bathroom adjacent to Cash's bedroom. Inside of the bathroom, Cash retrieved a second plastic bag with an unknown quantity of methamphetamine. Cash removed some methamphetamine from the second bag and placed this methamphetamine into the bag Cash then sold to the CD. Cash returned the second bag of methamphetamine to the bathroom from where the second bag had been removed. The substance inside the bag sold to the CD by Cash field-tested positive for methamphetamine. The aforementioned transaction was audio and video recorded.

7. A test performed by a forensic chemist employed at the DEA Southeast Laboratory found the substance sold by Cash to be approximately 28.1 grams of methamphetamine with a purity of 99%.

### MEETING BETWEEN THE CD AND CASH IN WILTON MANORS, FLORIDA ON FEBRUARY 26, 2020

On or about February 23, 2020, Cash sent the CD an unsolicited text message stating:

"I was just paid a VERY uncomfortable visit by the drug task force investigators of the Broward County Sheriff Dept. they told me they knew enough to present a case to get a search warrant and probably arrest me if I didn't immediately voluntarily cease my illegal activities that would probably result in confiscation of my house and at least 5-10 years in prison BEFORE parole! So needless to say my ass is SCARED and will do EXACTLY what they said to get them off my case!!! Therefore I'm completely finished!! So you know what that means. Good luck!!"

8. Further investigation was conducted by DEA Miami and BSO, who were unable to determine if anyone had approached Cash. Cash has exhibited anxiety and paranoia that has been attributed to his drug usage. The CD scheduled a meeting with Cash to question Cash about this text message. On or about February 26, 2020, Cash, the CD, and an unknown male ("UM") met at Georgie's Alibi Monkey Bar located at 2266 Wilton Drive in Wilton Manors, Broward County, Florida. During the meeting, Cash refused to speak about narcotics when the UM was present. When the UM left the table, Cash reiterated that Cash had been approached by BSO but was still willing to sell the CD methamphetamine. The meeting was audio recorded by the cooperating defendant.

### COUNT 3
### MARCH 5, 2020 SALE OF 25.84 GRAMS OF METHAMPHETAMINE FOR $800.00

[3]

9. On or about March 5, 2020, at approximately 4:45 PM, the CD paid $800.00 to Cash at Cash's residence located at 1125 North Victoria Park Road, in Fort Lauderdale, Broward County, Florida, to purchase approximately one (1) ounce or 28 grams of a substance that field tested positive for methamphetamine. Starting at approximately 2:52 PM, the CD ordered two (2) ounces of methamphetamine from Cash during a recorded telephone conversation. Cash delayed the delivery until, at approximately 3:56 PM, Cash text messaged the CD: "It's ready. Come get it." At approximately 4:45 PM, the CD arrived at Cash's residence and made contact with Cash, who was standing in front of his residence. The CD informed Cash that the CD only wished to purchase one (1) ounce of methamphetamine, not two (2) ounces. Cash instructed the CD to follow Cash into his residence. After entering the residence, Cash and the CD proceeded to the study area where Cash removed approximately one (1) ounce from the packaging and placed this methamphetamine into a desk drawer. Cash sold the CD the remainder of the methamphetamine for $800.00 and the CD departed Cash's residence. This transaction was audio and video recorded.

10. A preliminary test performed by a forensic chemist employed at the DEA Southeast Laboratory found the substance sold by Cash to be approximately 25.84 grams of methamphetamine.

### COUNT 4
### MARCH 27, 2020 SALE OF 55.66 GRAMS OF METHAMPHETAMINE FOR $1,600.00

11. On or about March 27, 2020, the CD and Cash communicated telephonically during which Cash advised the CD that Cash was not at home but a transaction of two ounces of methamphetamine for the purchase price of $1,600.00 could go forward if they could agree upon an alternate site. Cash and the CD decided to meet at the parking lot of the Trader Joe's located at 1560 North Federal Highway in Fort Lauderdale, Broward County, Florida. The CD approached the driver's side of the Cadillac SUV driven by Cash with an unknown passenger after his arrival. Cash lowered the front driver's side window and jokingly asked if the CD "liked chips" as Cash handed to the CD a potato chip bag that was empty except for a plastic bag that contained approximately two (2) ounces of a

[4]

substance that later field-tested positive for methamphetamine. The CD paid Cash the payment owed of $1,600.00 and departed. The transaction was recorded.

12. Cash subsequently inadvertently dialed the CD's telephone that recorded Cash having a conversation with the passenger inside his Cadillac. Cash explained to the unknown passenger that the CD had paid $800 per ounce and the CD could resell the methamphetamine he purchase for $225 per $1/8^{th}$ of an ounce which equals 3.5 grams.

13. A test performed by a forensic chemist employed at the DEA Southeast Laboratory found the substance sold by Cash to be approximately 55.66 grams of methamphetamine with a purity of 100%.

## COUNT 5
### AUGUST 5, 2020 BUY/BUST FOR 14 GRAMS OF METHAMPHETAMINE FOR $900.00

14. The CD had a series of memorialized telephonic communications with Cash discussing another purchase of methamphetamine that would set up a buy/bust by DEA. The negotiations started with a request for two ounces with a half of ounce eventually being the amount Cash agreed to sell at a purchase price of $900.00. Cash explained to the CD that the supply of methamphetamine was scare. Cash's supplier by mail of bulk amounts of methamphetamine located in California died from COVID-19 complications. According to Cash, the local supply of methamphetamine was limited because of the COVID-19 pandemic and the prices had increased. As Cash exited his condominium to meet the CD to complete the sale, Cash was arrested. A substance that weighed approximately 14 grams and field tested positive for methamphetamine was in Cash's possession. Cash waived his Miranda rights and consented to searches of his Cadillac SUV, condominium and cellular telephone. Two safes located in the master bedroom bathroom and an office were unlocked with the combination by Cash so law enforcement could search the contents of these safes. Inside the safe in the bathroom was found about seven (7) grams of a substance that field tested positive for methamphetamine and a loaded Keltec .380 pistol. Another firearm, a loaded Kimber .45 caliber pistol, was found inside the safe in the office. Nothing else of evidentiary value was found in the two safes. Cash confessed and identified in the contacts of his cellular telephone persons that had previously supplied Cash with methamphetamine.

[5]

15. A preliminary test performed by a forensic chemist employed at the DEA Southeast Laboratory found the substance to be sold by Cash to be approximately 14 grams of methamphetamine and found within the safe to be 6.821 grams of methamphetamine.

16. By his signature below, the defendant verifies that:

   A) he has read or had read to him and understood the foregoing;

   B) the stipulated factual record is true and correct;

   C) he signs this document freely and voluntarily after he has received the advice of his counsel.

Respectfully submitted,

UNITED STATES OF AMERICA

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 12/14/20   By: *Donald F. Chase, II*
DONALD F. CHASE, II
ASSISTANT UNITED STATES ATTORNEY

DEFENDANT

Date: 12/1/20   By: *[signature]*
LEA KRAUSS
ATTORNEY FOR THE DEFENDANT

Date: 12/15/20   By: *[signature]*
CARLTON EDWARD CASH
DEFENDANT

[6]